

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| Ian Mattlock Moore | § | |
| | § | No. 3:14-cv-836 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HorrorHound Ltd, LLC | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## COMPLAINT

Plaintiff Ian Mattlock Moore ("Plaintiff"), by counsel, respectfully submits this Complaint against Defendant HorrorHound Ltd, LLC, an Ohio limited liability company ("Defendant"), and alleges as follows:

### PARTIES

1.     Plaintiff, Ian Mattlock Moore is a citizen and resident of Maidens, Virginia.

2.     Upon information and belief, Defendant HorrorHound Ltd, LLC, is a limited liability company with a principal office address of 1197 Muirwood Lane, Batavia, Ohio 45103.

### JURISDICTION AND VENUE

3.     Upon information and belief, this Court has subject matter jurisdiction over trademark infringement arising under the Lanham Act pursuant to 15 U.S.C. § 1125(a) and 28 U.S.C. §§ 1331, 1338(a). This Court has subject matter jurisdiction over copyright infringement arising under the Copyright Act of the United States pursuant to 17 U.S.C. §§ 106, 501 and 28

U.S.C. § 1338(a). This Court has supplemental jurisdiction over Plaintiff's related state and common law claims pursuant to 28 U.S.C. §§ 1138 and 1367(a).

4.      This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has distributed or sold infringing merchandise within this State, has distributed or sold infringing merchandise to various companies with the knowledge that those companies sell merchandise in retail stores in this State, has engaged in acts or omissions outside of this State causing injury within this State, has manufactured or distributed products in this State causing injury within this State, has distributed products used or consumed within this State in the ordinary course of trade, or has otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

6.      In accordance with Local Civil Rule 3, filing in the Richmond Division is proper for the same reasons venue in the Eastern District is proper, namely that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Division.

<u>COMMON FACTS</u>

7.      Plaintiff is a well-known writer of articles that delve into the history of horror movies and address the fan base that collects and enjoys these films. Plaintiff has a reputation as an expert in the field among the tight-knit community of horror movie fans.

8.      Defendant publishes a magazine entitled *HorrorHound* marketed to fans of horror culture, including movies, television programs, toys and collectible items.

9.      In 2008, Plaintiff began writing a series of articles for Defendant entitled "Video Invasion$^{TM}$." The series focuses on the rise of the Video Home System (VHS) in America and

chronicles the many producers of horror-themed movies. Plaintiff's series was featured in Defendant's magazine from Issue 12, published in July, 2008, through Issue 39, published in January, 2013.

10.     In total, Plaintiff penned twenty-six articles for the VIDEO INVASION™ series. In addition, Plaintiff authored numerous other articles for Defendant, including an article entitled "The Prowler," published in Issue 22, and an article entitled "Tech Specs European Invasion," published in Issue 25.

11.     Fans of HorrorHound Magazine have especially loved the VIDEO INVASION™ series. In 2009, Plaintiff was nominated for a Rondo Hatton Classic Horror Award and was named Runner-Up for the VIDEO INVASION™ series. Later, in 2013, Plaintiff was interviewed for the documentary "Adjust Your Tracking" regarding the VHS culture. One commentator on the documentary stated that Plaintiff was "well-known as the HorrorHound columnist that popularized this [VHS collecting] craze."

12.     On information and belief, sales of Defendant's HorrorHound Magazine increased substantially in part due to the inclusion of the successful VIDEO INVASION™ series in the magazine.

13.     Plaintiff's articles required a significant amount of Plaintiff's time to write. In addition, Plaintiff spent a significant amount of time finding and arranging pictures of VHS covers to correspond to VHS tapes Plaintiff discussed in his articles to create a distinctive "look and feel" for the series.

14.     Despite the increased success of Defendant, Plaintiff received only sporadic payments for his articles. These sporadic payments were generally in amounts between fifty to

one-hundred dollars ($50.00 to $100.00). Plaintiff often had to demand these paltry payments before Defendant would forward a check or transfer the funds via the online service PayPal.

15.     In addition, Plaintiff often purchased goods and services on behalf of Defendant, with the promise that Plaintiff would be reimbursed. Plaintiff advanced over $20,000 (twenty-thousand dollars) that has yet to be repaid by Defendant.

16.     On information and belief, Defendant sells its magazines for $6.99 (six dollars and ninety-nine cents) each and produces six (6) issues per year. On information and belief, Defendant produces no fewer than thirty thousand (30,000) copies of each issue, and has produced up to seventy-five thousand (75,000) copies of some issues. Thus, on information and belief, Defendant's sales per year range between $1,260,000 and $3,150,000.

17.     HorrorHound Magazine's popularity is evidenced by the more than thirteen thousand (13,000) likes the magazine's Facebook page has received and the more than twenty thousand (20,000) individuals that follow HorrorHound on Twitter. On information and belief, Defendant sells its magazine internationally through its website and retail outlets, including big-box chains such as Barnes & Noble, Hastings and Books A Million as well as local comic book stores.

18.     In early 2013, Plaintiff and Defendant ended their working relationship. Plaintiff and Defendant agreed at that time that the VIDEO INVASION™ series would no longer be published in Defendant's magazine.

19.     Despite Plaintiff's decision to discontinue writing for Defendant, Defendant continued to list Plaintiff as a writer in Issues 40, 41, 42, 43, 44 and 45 (an entire year's worth of issues) of Defendant's magazine, all in an effort to benefit from the goodwill of the Plaintiff's reputation.

20.     In Issue 41, Defendant announced the return of the VIDEO INVASION™ series, to be included in the next issue, although Plaintiff was no longer affiliated with the magazine. Defendant never approached Plaintiff requesting permission to use Plaintiff's VIDEO INVASION™ Mark or the series "look and feel."

21.     In Issue 46, published in March, 2014, Defendant printed an article entitled "VHS Invasion." This article focused on the same subject matter as Plaintiff's VIDEO INVASION™ series.

22.     Furthermore, the "VHS Invasion" article's "look and feel" was almost identical to the "look and feel" of Plaintiff's VIDEO INVASION™ series.

23.     Plaintiff's VIDEO INVASION™ series trade dress (i.e. "look and feel") consists of: (i) a band of black roughly one inch wide and a light gray horizontal line near the bottom of such band, in each case, running horizontally from left to right across the top of the left page and continuing slightly across the fold onto the opposite page where the black band is composed of images of reels of VHS tapes laid end to end. The band feature three additional text and/or design elements: first, the text "THE VIDEO INVASION REMEMBERING THE VHS BOOM!", second, a colorful central consistently sized circle featuring text consisting of the stylized Volume Title and design, and third, text comprised of the Volume Number, Volume Title, and Plaintiff Matt Moore's name; (ii) two columns of text on both pages bifurcated by a central colorful video cassette cover; (iii) a band of colorful cassette covers creating a band approximately two inches wide across all or substantially all of the bottom of both pages of the articles, and across the top of the second page of the article; and (iv) the use of consistent font in white on black for the Series and Volume names displayed in the black band. Plaintiff's VIDEO

5

INVASION™ series featured all of these elements in the layout of each of the twenty-six VIDEO INVASION™ articles.

24.     Defendant's VHS Invasion series included all of the elements listed above and thus had the same look and feel as Plaintiff's VIDEO INVASION™ series.

25.     Defendant's infringement of Plaintiff's trade dress and use of Defendant's VHS Invasion trademark was intended to cause and has caused actual confusion in the marketplace. For example, on March 13, 2014, a fan of Plaintiff's VIDEO INVASION™ series posted in a forum: "Video Invasion is back in HorrorHound this month? Nice." This statement confused Defendant's VHS Invasion article, published in the March, 2014 issue of Defendant's magazine, with Plaintiff's VIDEO INVASION™ series. At this point, Plaintiff's VIDEO INVASION™ series had not been published in Defendant's magazine for approximately one year.

26.     Defendant published another VHS Invasion article in Issue 49.

27.     In Issue 50, Defendant published a "HorrorHound Magazine Index." This index listed all of Plaintiff's previously published VIDEO INVASION™ articles as "VHS Invasion" articles, assuming credit for all of the VIDEO INVASION™ articles and willfully attempting to re-write history by removing references to the VIDEO INVASION™ series. Despite this attempt to re-write history, Defendant managed to foil part of the plan itself, by including in the index the cover of Issue 22, where the VIDEO INVASION™ series is promoted prominently on the front and center portion of the cover. Exhibit A. Defendant's listing of the VIDEO INVASION™ articles as "VHS Invasion" articles significantly enhances the likelihood of confusion between Plaintiff's VIDEO INVASION™ series and "VHS Invasion," as Defendant has willfully led consumers to believe that all of Plaintiff's VIDEO INVASION™ articles are actually "VHS Invasion" articles.

28.     Defendant again published a VHS Invasion article in Issue 50.

29.     In addition, on information and belief, Defendant continues to inform advertisers that upcoming issues will contain the VIDEO INVASION™ series. Due to Defendant's actions, these advertisers have promoted HorrorHound Magazine by, in part, advertising the inclusion of the VIDEO INVASION™ series.

30.     Plaintiff, as writer, is the owner of all intellectual property rights in the VIDEO INVASION™ series as well as other works produced by Plaintiff and published in Defendant's magazine.

31.     Plaintiff is also the owner of the mark VIDEO INVASION™, which Plaintiff uses to identify his series of articles. As a result of Plaintiff's continuous use of the VIDEO INVASION™ Mark to identify Plaintiff's series, Plaintiff owns common law rights to the VIDEO INVASION™ Mark.

32.     Plaintiff filed an application to federally register the VIDEO INVASION™ mark on December 12, 2014 (U.S. Serial Number 86480154), a copy of the United States Patent and Trademark Office filing receipt for this mark is shown as Exhibit B.

33.     Plaintiff has registered the mark VIDEO INVASION™ with the Commonwealth of Virginia, Virginia Trademark Registration Number 11110.

34.     In addition, Plaintiff currently has a federal copyright application pending for the VIDEO INVASION™ series of articles covering Issues 34 through 39.

35.     Plaintiff did not assign or license his intellectual property rights in the articles, the VIDEO INVASION™ Mark, or his name to Defendant at any time.

## COUNT I
## UNFAIR COMPETITION UNDER THE LANHAM ACT
### (As to VIDEO INVASION[TM] Mark)

36.     Plaintiff repeats and re-alleges each of the allegations above as if fully set forth herein.

37.     Defendant's unauthorized use of Plaintiff's VIDEO INVASION[TM] is likely to and has caused actual confusion among the consuming public as to the origin, sponsorship, or approval of Defendant's goods.

38.     As a result of Defendant's unauthorized use of Plaintiff's VIDEO INVASION[TM] Mark in connection with articles in the field of collecting horror movies, the consuming public has believed, and is likely to continue to believe, that Defendant's articles have been created or approved by Plaintiff. Such use falsely represents Defendant as being legitimately affiliated, connected, or associated with or authorized by Plaintiff. Defendant's use further places Plaintiff's valuable and hard-earned reputation and goodwill in the hands of Defendant in violation of 15 U.S.C. § 1125(a).

39.     Furthermore, Defendant's unauthorized use of the VHS Invasion mark, a confusingly similar imitation of Plaintiff's VIDEO INVASION[TM] Mark, is likely to cause confusion, to cause mistake, or to deceive the consuming public as to the origin, sponsorship, or approval of Defendant's goods, and in fact has caused confusion, mistake, and has deceived the consuming public as to the origin, sponsorship, or approval of Defendant's goods.

40.     As a result of Defendant's unauthorized use of a confusingly similar imitation of Plaintiff's Mark in connection with articles in the field of collecting horror movies, the consuming public has believed, and is likely to continue to believe, that Defendant's articles have been created or approved by Plaintiff. Such use falsely represents Defendant as being

legitimately affiliated, connected, or associated with or authorized by Plaintiff. Defendant's use further places Plaintiff's valuable and hard-earned reputation and goodwill in the hands of Defendant in violation of 15 U.S.C. § 1125(a).

41.     In using Plaintiff's Mark, Defendant knowingly and intentionally caused actual confusion among the relevant consuming public as to the source of Defendant's VHS Invasion articles.

42.     Defendant's conduct is causing immediate and irreparable injury to Plaintiff, his goodwill and reputation, and will continue to damage Plaintiff and deceive the public unless enjoined by this Court pursuant to 15 U.S.C. § 1116.

43.     In addition to injunctive relief, Plaintiff is entitled to recover his actual damages, costs, reasonable attorneys' fees, and Defendant's profits under 15 U.S.C. § 1117 in an amount to be determined.

### COUNT II
### FEDERAL UNFAIR COMPETITION UNDER THE LANHAM ACT
#### (As to Trade Dress)

44.     Plaintiff repeats and re-alleges each of the allegations above as if fully set forth herein.

45.     Defendant's unauthorized use of confusingly similar imitations of Plaintiff's trade dress is likely to and has caused actual confusion among the consuming public as to the origin, sponsorship, or approval of Defendant's goods.

46.     As a result of Defendant's unauthorized use of Plaintiff's trade dress in connection with articles in the field of collecting horror movies, the consuming public has believed, and is likely to continue to believe, that Defendant's articles have been created or approved by Plaintiff. Such use falsely represents Defendant as being legitimately affiliated,

connected, or associated with or authorized by Plaintiff. Defendant's use further places Plaintiff's valuable and hard-earned reputation and goodwill in the hands of Defendant in violation of 15 U.S.C. § 1125(a).

47.     In using Plaintiff's Mark, Defendant knowingly and intentionally caused actual confusion among the relevant consuming public as to the source of Defendant's VHS Invasion articles.

48.     Defendant's conduct is causing immediate and irreparable injury to Plaintiff, his goodwill and reputation, and will continue to damage Plaintiff and deceive the public unless enjoined by this Court pursuant to 15 U.S.C. § 1116.

49.     In addition to injunctive relief, Plaintiff is entitled to recover his actual damages, costs, reasonable attorneys' fees, and Defendant's profits under 15 U.S.C. § 1117 in an amount to be determined.

**COUNT III**
**STATE TRADEMARK INFRINGEMENT**
(As to VIDEO INVASION™ Mark)

50.     Plaintiff repeats and re-alleges each of the allegations above as if fully set forth herein.

51.     Defendant's unauthorized use of Plaintiff's VIDEO INVASION™ Mark is likely to cause, and in fact has caused, consumer confusion, mistake, or deception as to the source or origin of Defendant's goods in violation of Virginia Code Ann. § 59.1-92.12.

52.     Furthermore, Defendant's unauthorized use of the VHS INVASION Mark, a confusingly similar imitation of Plaintiff's VIDEO INVASION™ Mark, is likely to cause, and in fact has caused, consumer confusion, mistake, or deception as to the source or origin of Defendant's goods in violation of Virginia Code Ann. § 59.1-92.12.

53.     In using Plaintiff's Mark, Defendant knowingly and intentionally caused actual confusion among the relevant consuming public as to the source of Defendant's VHS Invasion articles.

54.     As a result of Defendant's intentional actions, Plaintiff is entitled to recover his actual damages, costs, reasonable attorneys' fees, and Defendant's profits under Virginia Code Ann. § 59.1-92.12 in an amount to be determined.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION/MISAPPROPRIATION
(As to the VIDEO INVASION$^{TM}$ Mark and trade dress)

55.     Plaintiff repeats and re-alleges each of the allegations above as if fully set forth herein.

56.     Defendant's acts constitute common law unfair competition and have created and will continue to create a likelihood of confusion by using a confusingly similar imitation of Plaintiff's Mark and trade dress.

57.     On information and belief, Defendant acted with full knowledge of Plaintiff's use of, and common law rights to, the VIDEO INVASION$^{TM}$ Mark and trade dress and acted without regard to the likelihood of confusion of the public created by Defendant's activities.

58.     Such confusion has actually occurred, and is likely to continue to occur, due to Defendant's actions.

59.     Defendant's actions demonstrate an intentional and willful intent to trade on the goodwill and reputation associated with Plaintiff's Mark to the great and irreparable injury of Plaintiff.

60.     As a result of Defendant's acts, Plaintiff has been damaged in an amount not as yet determined or ascertainable. At a minimum, however, Plaintiff is entitled to injunctive relief,

to an accounting of Defendant's profits, to damages, and to costs. Further, in light of the deliberately fraudulent use of Plaintiff's Mark and a confusingly similar imitation of Plaintiff's Mark, and the need to deter Defendant from similar conduct in the future, Plaintiff additionally is entitled to punitive damages.

## COUNT V
### FEDERAL COPYRIGHT INFRINGEMENT

61.    Plaintiff repeats and re-alleges each of the allegations above as if fully set forth herein.

62.    Plaintiff is, and all relevant times has been, the copyright owner of exclusive rights with respect to every VIDEO INVASION™ article Plaintiff penned and all artistic elements incorporated by Plaintiff into each article.

63.    As copyright owner of exclusive rights, Plaintiff is solely entitled to reproduce, distribute, prepare derivative works, and/or display Plaintiff's copyrighted work.

64.    Defendant's publication of an article entitled VHS INVASION infringed Plaintiff's exclusive rights by preparing a derivative work without Plaintiff's consent or agreement.

65.    Defendant's acts were willful and intentional and with disregard of and indifference to the rights of Plaintiff.

66.    Defendant's conduct is causing immediate and irreparable injury to Plaintiff, his goodwill and reputation, and will continue to damage Plaintiff and deceive the public unless enjoined by this Court pursuant 17 U.S.C. § 502.

## COUNT VI
### STATUTORY RIGHT OF PUBLICITY

67.     Plaintiff repeats and re-alleges each of the allegations above as if fully set forth herein.

68.     Plaintiff has the sole and exclusive right of publicity with regard to the use of his name in Defendant's magazine.

69.     After Plaintiff decided to discontinue his working relationship with Defendant, Defendant published Plaintiff's name in Defendant's magazine for the purposes of trade on at least three different occasions.

70.     Defendant's unauthorized and unlawful use of Plaintiff's name was willful, intentional, and knowing.

71.     Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff, his goodwill and reputation, and will continue to damage Plaintiff and deceive the public unless enjoined by this Court pursuant to Virginia Code Ann. § 8.01-40.

72.     Furthermore, as a result of Defendant's knowing use of Plaintiff's name, Plaintiff is entitled to recover actual and exemplary damages pursuant to Virginia Code § 8.01-40.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1. Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined permanently, from:

   a. Using the VHS INVASION mark and the VIDEO INVASION$^{TM}$ series trade dress, or any other copy, reproduction, or colorable imitation or simulation of

13

Plaintiff's VIDEO INVASION™ Mark or trade dress, on or in connection with Defendant's goods or services;

b. Using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the trademark or trade dress of Plaintiff;

c. Using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiff, is sponsored or authorized by Plaintiff, or is in any way connected or related to Plaintiffs;

2. Defendant be ordered to recall all products that infringe Plaintiff's Mark or trade dress which have been shipped by Defendant or under its authority, to any customer including, but not limited to, any wholesaler, distributor, retailer, or marketer;

3. Defendant be ordered to deliver up for impoundment and destruction all magazines and merchandise, including but not limited to shirts, hats, sweaters, ball caps, etc., in the possession, custody, or under the control of Defendant that is found to adopt, to infringe, or to dilute Plaintiff's Mark or trade dress;

4. Defendant be compelled to account to Plaintiff for any and all profits derived from Defendant from the sale or distribution of infringing goods as described in this Complaint, including prejudgment interest thereon;

5. Plaintiff be awarded all damages, expressly including unreimbursed expenses paid by Plaintiff and unpaid wages, caused by the acts forming the basis of this Complaint, together with prejudgment interest thereon;

6. Based on Defendant's knowing and intentional use of Plaintiff's Mark, Plaintiff's trade dress, and a colorable imitation of Plaintiff's Mark, the damages award be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117 and Virginia Code Ann. § 59.1-92.12;

7. Defendant be required to pay to Plaintiff the cost of this action and Plaintiff's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and Virginia Code Ann. § 59.1-92.12;

8. Based on Defendant's willful and deliberate infringement of Plaintiff's Mark and trade dress, and to deter such conduct in the future, Plaintiff be awarded punitive damages; and

9. Such other and further relief as the Court may deem just.

JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

DATED: December 17, 2014

Pamela C. Gavin, Esq.
VSB No. 37328
pgavin@gavinlawoffices.com
2229 Pump Road, Suite A
Richmond, Virginia 23233
Telephone: 804-784-4427
Facsimile: 804-482-2964