UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IAN MATTLOCK MOORE,<br><br>         Plaintiff,<br><br>  v.<br><br>HORRORHOUND LTD, LLC,<br><br>         Defendant. | Civil Action No. 3:14-CV-836 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Amend Complaint ("Motion") (ECF No. 20), filed by Plaintiff, Ian Mattlock Moore ("Plaintiff" or "Moore"), on July 31, 2015. Defendant, HorrorHound LTD, LLC ("Defendant" or "HorrorHound"), filed a response in opposition on August 11, 2015 ("Opp'n Mem.") (ECF No. 22). Plaintiff subsequently filed a reply on August 12, 2015 ("Reply Mem.") (ECF No. 23). The parties have not requested a hearing on this matter, and the Court finds that oral argument is unnecessary. *See* E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court hereby GRANTS the Motion.

**I. BACKGROUND**

  **a. *Factual Background*[1]**

Plaintiff is a writer of articles that delve into the history of horror movies, and Defendant publishes a magazine entitled *HorrorHound* marketed to fans of horror culture. In 2008, Plaintiff began writing a series of articles for Defendant entitled "Video Invasion." The series focuses on the rise of the Video Home System ("VHS") in America and chronicles the many producers of horror-themed movies. In total, Plaintiff penned twenty-six articles for the Video Invasion series from July 2008 through January 2013.

In early 2013, Plaintiff and Defendant ended their working relationship, and agreed at

---

[1] The factual background is drawn from Plaintiff's First Amended Complaint. (ECF No. 9.)

1

that time that the Video Invasion series would no longer be published in Defendant's magazine. Despite Plaintiff's decision to discontinue writing for Defendant, Defendant continued to list Plaintiff as a writer in Issues 40, 41, 42, 43, 44 and 45 (an entire year's worth of issues). In Issue 41, Defendant announced the return of the Video Invasion series, although Defendant had never approached Plaintiff requesting permission to use the Video Invasion trademark or the series' "look and feel."

In Issue 46, published in March 2014, Defendant printed an article entitled "VHS Invasion," which focused on the same subject matter as Plaintiff's Video Invasion series. Plaintiff alleges that the VHS Invasion article's "look and feel" was almost identical to the "look and feel" of Plaintiff's Video Invasion series. In other words, Plaintiff argues that the VHS Invasion articles were derived from the Video Invasion series. Plaintiff alleges that Defendant infringed upon Plaintiff's trade dress, and the use of Defendant's VHS Invasion trademark was intended to cause and has caused actual confusion in the marketplace.

### b. *Procedural Background*

On December 17, 2014, Plaintiff filed a six-count Complaint against Defendant alleging: (1) unfair competition under the Lanham Act; (2) federal unfair competition under the Lanham Act; (3) state trademark infringement; (4) common law unfair competition/misappropriation; (5) federal copyright infringement; and (6) statutory right of publicity. Defendant then filed a Motion to Dismiss all claims except Claim One pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 6.) Plaintiff subsequently filed an Amended Complaint, which provided additional factual support for his claims and added a seventh claim for common law Quantum Meruit against Defendant. (ECF No. 9.) On May 7, 2015, Defendant filed an answer to the Amended Complaint. (ECF No. 11.) On June 25, 2015, this Court held a pretrial conference and set a trial date of December 14-16, 2015. Pursuant to the Pretrial Order, discovery is scheduled to conclude on October 6, 2015. (ECF No. 17.)

Plaintiff then filed the present Motion on July 31, 2015, seeking leave to file a Second

Amended Complaint. Plaintiff's proposed Second Amended Complaint (attached to Plaintiff's Motion as Exhibit A), includes three new counts: (1) declaratory judgment (count V); (2) accounting (count VI); and (3) constructive trust (count VII).[2] These additional counts add a claim in the alternative for a declaratory judgment of joint ownership of the copyright in each Video Invasion article that Plaintiff penned, along with the remedies available to him under such a claim.

## II. LEGAL STANDARD

Rule 15(a) states that a party may amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A)–(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R .Civ. P. 15(a)(2). Typically, a court should allow a party to amend unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citations and internal quotation marks omitted). "Disposition of a motion to amend is within the sound discretion of the district court." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (citations omitted).

## III. DISCUSSION

As noted above, a court should allow a party to amend a pleading unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426 (citations and internal quotation marks omitted). The Court will thus address each of these three factors in turn.

//

---

[2] Plaintiff's proposed Second Amended Complaint also eliminates Plaintiff's claim for federal unfair competition under the Lanham Act.

(1) Prejudice

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Id.* at 427. For example, "a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Id.* (citations and internal quotation marks omitted).

The Fourth Circuit in *Equal Rights Center v. Niles Bolton Associates*, 602 F.3d 597 (4th Cir. 2010) affirmed the district court's denial of plaintiff's motion for leave to amend its complaint based on a finding of prejudice. "After the close of a three-year long discovery process and on the eve of the deadline for dispositive motions," the plaintiff in *Equal Rights Center* wished to add a new claim which would change the litigation theory to one of partial, instead of sole, liability. *Id.* at 603. The district court noted that the defendant's "'litigation plan did not contemplate such an atomistic battlefield.'" *Id.* (quoting *Equal Rights Ctr. v. Archstone Smith Trust*, 603 F. Supp. 2d 814, 818–19 (D. Md. 2009)). The Fourth Circuit found "compelling the [district] court's analysis that the amendment–coming so belatedly–would change the nature of the litigation, and would therefore, prejudice [the defendant]." *Id.* at 604.

Similarly, in *Deasy*, the Fourth Circuit affirmed the district court's denial of the plaintiff's motion for leave to amend. Plaintiff's original complaint only alleged negligence regarding the defendant's failure to inform plaintiff of her medical test results or of the need for reexamination. 833 F.2d at 41–42. "Thus cast, the complaint raised a purely factual question, the resolution of which required no medical expertise." *Id.* But the plaintiff then sought to add a new claim "just before trial" that the defendant failed to meet the applicable standard of care in performing the medical test. *Id.* at 41–42. The Fourth Circuit held that this claim would "alter substantially the nature of the lawsuit," and "[t]he proof required to defend against this new claim would be of an entirely different character than the proof which the defendant had been led to believe would be necessary." *Id.* at 42. The Court held, "Belated claims which change the

character of litigation are not favored." *Id.* (citations omitted).

In contrast to prejudicial amendments, an amendment that "merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred," would not be considered prejudicial. *Laber*, 438 F.3d at 427 (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (reversing district court's denial of plaintiff's motion to amend where "the amendment would have done no more than state an alternative theory for recovery"); *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) ("[T]he fact that an amendment changes the plaintiff's theory of the case will not suffice as a reason for denial absent a showing of prejudice, bad faith, futility, or dilatoriness associated with the motion."). Moreover, "[d]elay alone . . . is an insufficient reason to deny the plaintiff's motion to amend." *Laber*, 438 F.3d at 427 (citing *Davis*, 615 F.2d at 613); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) ("[D]elay must be accompanied by prejudice, bad faith, or futility.").

Here, Defendant argues that Plaintiff seeks to "change the character of this litigation" by "add[ing] an alternative, contradictory theory requesting a declaratory judgment that the parties are joint owners of the Video Invasion articles that appeared in *HorrorHound* Magazine." (Opp'n Mem. at 4.) Defendant also claims that Plaintiff's amendment "greatly expand[s] the scope of this litigation" as the proposed Second Amended Complaint seeks a declaratory judgment on the question of ownership of twenty-six (26) Video Invasion articles, rather than the six (6) articles Plaintiff had included in his original Complaint and First Amended Complaint. (*Id.* at 5.) Finally, Defendant submits that Plaintiff has unduly delayed in filing his Motion, and because "much of discovery has already occurred in this case," Defendant would be prejudiced by the proposed amendment. (*Id.* at 4, 6.)

In reply, Plaintiff argues that "[t]his [case] has always been, and will remain in spite of the proposed amendment, a case about Mr. Moore's work in connection with his VIDEO INVASION™ articles." (Reply Mem. at 2.) Defendant asserted in its Answer that it is the sole

5

owner of the copyright. "Therefore, [Plaintiff contends], the crux of the copyright portion of the case, even without amendment, revolves around who owns the copyright to the VIDEO INVASION™ articles." (*Id.* at 3.) Finally, Plaintiff notes that the Motion is made with two months left in the discovery period and well before trial or the deadline for dispositive motions. (*Id.*)

The Court finds Plaintiff's argument more compelling as Plaintiff's proposed amendment would not change the character of this litigation. Both the First Amended Complaint and the proposed Second Amended Complaint discuss the twenty-six articles that Plaintiff allegedly penned for the Video Invasion Series. (ECF No. 9, at ¶ 10; Mot., Ex. A at ¶ 10.) Both Complaints also note that Plaintiff currently has a federal copyright application pending for the Video Invasion series of articles covering Issues 34 through 39. (ECF No. 9, at ¶ 37; Mot., Ex. A at ¶ 39.) Additionally, both Complaints allege that "Plaintiff is, and [at] all relevant times has been, the copyright owner of exclusive rights with respect to every VIDEO INVASION™ article Plaintiff penned." (ECF No. 9 at ¶ 67; Mot., Ex. A at ¶ 73.) In addition, as Plaintiff notes, Defendant's Answer to the Amended Complaint alleges that Defendant "owns the copyright rights in and to each of the final published VIDEO INVASION™ articles." (ECF No. 11 at ¶ 108; *see also* ¶¶ 113, 115.) Thus, Plaintiff's proposed amendment for a joint copyright authorship claim "flows from the assertions made in Defendant's Answer." (Mem. in Supp. of Mot. at 3.) Unlike the claims in *Equal Rights Center* and *Deasy*, Plaintiff's proposed joint authorship claim would not substantially change the nature of this litigation. Rather, the claim of joint authorship stems from the same set of core facts and prior allegations.

Furthermore, the present Motion was not made "shortly before or during trial." *Laber*, 438 F.3d at 427. Plaintiff filed the present Motion on July 31, 2015–after discovery has progressed for only a month and a half. (Mem. in Supp. of Mot. at 4.) A jury trial is currently scheduled to begin on December 14, 2015, and all discovery is set to be completed by October 6, 2015. (ECF No. 17.) Thus Plaintiff made his Motion with two months left in the discovery period,

6

and well before any dispositive motions are due.[3]

(2) <u>Bad Faith</u>

With regards to bad faith, Plaintiff submits that his desired amendment "stem[s] from a good faith belief in [a] legitimate claim against the [Defendant]." (Mem. in Supp. of Mot. at 4) (quoting *Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 571 (E.D. Va. 2004)). Defendant's opposition does not comment on Plaintiff's bad faith, but instead highlights undue delay (which is addressed under the prejudice prong above). Without evidence that Plaintiff acted in bad faith, this factor weighs in favor of Plaintiff.

(3) <u>Futility</u>

Leave to amend a complaint will be denied "on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (citations omitted). "If a proposed amendment sets forth facts and circumstances which *may* entitle a plaintiff to relief, then futility is not a proper basis on which to deny the amendment," because "it is the possibility of recovery, and not its likelihood, that guides this Court's analysis." *Smithfield Foods Inc. v. United Food and Commercial Workers Int'l Union*, 254 F.R.D. 274, 280 (E.D. Va. 2008) (citation omitted) (emphasis added).

Here, Defendant takes issue with the three additional counts (counts V[4], VI[5] and VII[6]) pled in Plaintiff's proposed Second Amended Complaint, arguing that Plaintiff's proposed Second Amended Complaint is futile as it "is insufficient or frivolous on its face." (Opp'n Mem.

---

[3] "In the absence of prejudice, the granting of leave to amend is normally warranted." *Fletcher v. Tidewater Builders Ass'n Inc.*, 216 F.R.D. 584, 587 (E.D. Va. 2003) (citation omitted). For the sake of thoroughness, however, the Court will address the remaining two factors in the analysis: bad faith and futility.

[4] Count V of Plaintiff's proposed Second Amended Complaint seeks a declaratory judgment that if Plaintiff is not the sole owner of each Video Invasion article that he penned, then, in the alternative, he is, at the very least, a joint author. (Mot., Ex. A at ¶ 82.)

[5] Count VI seeks an accounting to Plaintiff for his pro rata share of profits Defendant made from the Video Invasion articles as well as VHS Invasion articles. (*Id.* at ¶¶ 92–94.)

[6] In Count VII, Plaintiff alleges that "Defendant wrongfully deprived Plaintiff of his share of the profits that Defendant enjoyed from the commercial exploitation of each Video Invasion article that he penned and/or the Video Invasion series as a whole, as well as the VHS Invasion articles." (*Id.* at ¶ 99.) Plaintiff argues that "[b]y virtue of Defendant's acts, Defendant holds the[se] profits . . . as constructive trustee for the benefit of Plaintiff and Defendant." (*Id.* at ¶ 100.)

at 8.) Specifically, Defendant argues in part that even if the Court were to find Plaintiff to be a joint owner of the Video Invasion articles, Plaintiff would not be the joint owner of the VHS Invasion articles, a derivative work[7], and thus would not be entitled to any profits arising from the VHS Invasion articles. (*Id.*) (citing *Weissman v. Freeman*, 868 F.2d 1313 (2d Cir. 1989)). Plaintiff responds that the proposed Second Amended Complaint "is not futile as it properly states a claim for a declaratory judgment of joint authorship under the Copyright Act and claims for accompanying remedies resulting therefrom." (Mem. in Supp. of Mot. at 4.) Plaintiff further claims that "Defendant [has] misstate[d] the law with respect to a joint copyright owner's rights to a share of profits in a derivative work." (Reply Mem. at 5.) Thus, in order to decide whether Plaintiff's proposed Second Amended Complaint is futile, the Court must determine whether Plaintiff (if found to be a joint author of the Video Invasion articles), is entitled to a share of the profits derived from the VHS Invasion articles.

The Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Further, the Act provides that "[t]he authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a); *see also Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542, 550 (E.D. N.C. 2008) ("Where two parties engage in a joint effort to create a copyrighted work, they are joint owners of the resulting copyright.") (citations omitted).

The owner of copyright has the exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). Joint authorship of a pre-existing work, however, does not automatically make the joint authors co-owners of the derivative work. *Weissmann*, 868 F.2d at 1317. But, that being said, "a joint owner is [still] under a duty to account to the other joint owners of the [pre-existing] work for a rateable share of the profits realized from his

---

[7] The Copyright Act defines "derivative work" as "a work based upon one or more preexisting works." 17 U.S.C. § 101. A derivative work "consists of a contribution of original material to a pre-existing work so as to recast, transform or adapt the pre-existing work." *Mass. Museum of Contemporary Art Found., Inc. v. Buchel*, 593 F.3d 38, 65–64 (1st Cir. 2010).

use of the work." 1-6 Nimmer on Copyright § 6.12; *see also Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) ("[E]ach joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made."); *Weissmann*, 868 F.2d at 1318 (citation omitted) ("The only duty joint owners have with respect to their joint work is to account for profits from its use."). In other words, "a joint author must account to his co-author for use of their joint work in a derivative work." *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455, 467 (S.D.N.Y. 2000). This rule has been justified on the basis that "a 'constructive trust' exists between the joint owners that requires such an accounting." 1-6 Nimmer on Copyright § 6.12.

In this case, Count V of Plaintiff's proposed Second Amended Complaint seeks a declaratory judgment that Plaintiff and Defendant are joint authors of the Video Invasion articles. Based on the law defined above, if Plaintiff is found to be a joint author, Counts VI and VII properly request Plaintiff's pro rata share of the profits that Defendant enjoyed from each Video Invasion article, as well as profits Defendant enjoyed from the derivative work, VHS Invasion articles.[8]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

```
               /s/
James R. Spencer
Senior U. S. District Judge
```

ENTERED this   27th   day of August 2015.

---

[8] With regards to Defendant's argument that Plaintiff pleads "remedies, not causes of action" in Counts VI and VI, (Opp'n Mem. at 7–8), such argument must be dismissed. Case law demonstrates that in joint copyright ownership complaints, plaintiffs may include a separate count for an accounting of profits and/or a constructive trust. *See Corwin v. Quinonez*, 858 F. Supp. 2d 903 (N.D. Ohio 2012); *Exceller Software Corp. v. Pearson Educ., Inc.*, No. 10 CIV 0381(PGG), 2010 WL 4486944 (S.D.N.Y. Nov. 9, 2010); *Maurizio v. Goldsmith*, No. 96 CIV. 4332(LMM), 2001 WL 1568428 (S.D.N.Y. Dec. 5, 2001).